UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROSALIND ZOBLOTSKY and HAROLD          CIVIL ACTION
ZOBLOTSKY

VERSUS                                 NO: 03-2957

TENET CHOICES, INC., ET AL.            SECTION: "J" (3)

**ORDER AND REASONS**

Before the Court is Guiffria, Inc.'s Motion to Dismiss
Cross-Claim of Tenet Choices, Inc. Against Giuffria, Inc. d/b/a
Chateau Drugs, for Failure to State a Claim Upon Which Relief Can
Be Granted.  (Rec. Doc. 131).  Tenet Choices ("Tenet") opposes
the Motion. For the reasons below, the motion is **GRANTED**.

**BACKGROUND**

On July 6, this Court issued an order dismissing plaintiff's
claims against Giuffria, Inc. d/b/a Chateau Drugs ("Chateau") for
failure to submit the case to a Medical Review Board as required
by the Louisiana Medical Malpractice Act ("MMA").  The Court's
order noted that "Tenet has filed a cross claim against Chateau
seeking contribution and indemnification for any damages that may
be awarded against Tenet.  Today's decision only relates to

Chateau's motion to dismiss the Plaintiff's claims against it and not Tenet's claims.  This Court's dismissal of Plaintiff's claims against Chateau does not defeat Tenet's claims against Chateau." (Rec. Doc. 115 at p.2 n.1).

Chateau now seeks to dismiss the claims against it by Tenet for the same reasons that the Court dismissed plaintiffs claims against it.

**DISCUSSION**

**A. Legal Standard**

When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept as true all well-plead allegations and resolve all doubts in favor of the plaintiff. *Tanglewood E. Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965.

**B.  The Court's Previous Decision**

Chateau claims that because Tenet's claims against it make essentially the same allegations that Plaintiffs made, it should

be dismissed for the same reasons that the Court dismissed the Plaintiffs claim.  Tenet responds first by claiming that this Court already considered whether Tenet's claim against Chateau should be dismissed and decided that it should not.  In this respect Tenet is incorrect.

This court noted that its July 6 order only applied to Plaintiffs' claims against Chateau and not Tenet's claims against Chateau.  This Court cited *Deauville Corp. v. Garden Suburbs Golf & Country Club*, 165 F.2d 431, 432 (5th Cir. 1948) for the proposition that just because the claim between the plaintiff and a defendant is dismissed, a cross claim between two defendants is not affected.  *Id.* at 432.  *Accord Heiser v. Ass'n of Apartment Owners of Polo Beach Club*, 848 F. Supp. 1488-89 (D. Haw. 1993)(holding that a federal court may permit Plaintiffs to dismiss a defendant with the limitation that the cross-claims which have been filed against the defendant will remain unaffected); *Slotkin v. Brookdale Hosp. Ctr.*, 377 F. Supp. 275, 277-78 (S.D.N.Y. 1974); *Barker v. La. & Ark. Ry. Co.*, 57 F.R.D. 489, 491 (W.D. La. 1972).  Thus, this Court expressed no opinion on the merits of the Cross Claim between Tenet and Chateau.  The Court merely determined that the July 6 order did not dismiss the Cross Claims against Chateau merely because the plaintiff's claim is dismissed.

**C.   The Intentional Tort Claim**

Chateau seeks to dismiss Tenet's claims against it for the same reasons that the Plaintiff's claims were dismissed, namely that the action is a malpractice one which must be submitted to a Medical Review Board.

At the outset, submission of a claim to a medical review board is only required for acts that amount to malpractice. *See Furlow v. Woodlawn Manor, Inc.*, 900 So. 2d 336, 339 (La. App. 2 Cir. 2005).  Malpractice is defined by the MMA as follows:

> "Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, including failure to render services timely and the handling of a patient, including loading and unloading of a patient, and also includes all legal responsibility of a health care provider arising from acts or omissions during the procurement of blood or blood components, in the training or supervision of health care providers, or from defects in blood, tissue, transplants, drugs, and medicines, or from defects in or failures of prosthetic devices implanted in or used on or in the person of a

4

patient."

LA. REV. STAT. ANN. § 40:1299.41 (A)(8)

Tenet's first claim is that since Tenet alleges that some of Chateau's actions are intentional torts, its action is not malpractice, as malpractice only refers to unintentional torts. Tenet notes that one of the *Coleman* factors in determining whether malpractice exists is whether the alleged tort was intentional. *See Coleman v. Deano*, 813 So. 2d 303, 315-16 (La. 2002)(listing six factors for determining when an act is malpractice).

However, the mere fact that a claimant alleges an intentional tort does not prevent a court from determining that the MMA applies. *See Richardson v. Advanced Cardiovascular Sys.*, 865 F. Supp. 1210, 1218-19 (E.D. La. 1994).   The court in that case determined that the mere allegation of an intentional tort does not prevent the court from "piercing the veil." *Id.* at 1218. The court refused "to be swayed by semantic manipulations."  *Id.* The court noted that in Louisiana, damages due to intentional acts require that the defendant must have desired the result or realized to a virtual certainty that the result would occur.  *Id.* (*citing Smith v. Mahfouz*, 489 So. 2d 409, 413 (La. App. 3 Cir. 1986)).  The Court also noted that an instance of outrageous conduct is required.  *Id.* (*citing Steadman v. S. Cent. Bell Tel.*

5

*Co.*, 362 So. 2d 1144 (La. App. 2 Cir. 1978)(en banc)).  The *Richardson* court concluded that since the plaintiffs did not assert that the doctor in that case intended for the death of the patient to occur and did not allege any outrageous conduct during the surgery in question, the court would view charges of intentional misconduct "as attempts . . . to circumvent the confines of the Medical Malpractice Act."  *Id.*

Similarly, in this case, the mere use of the word intentional in the pleadings does not move the case out of the realm of medical malpractice.  As the Fifth Circuit has held, "the use of the word 'intent' . . . is not a talisman that can change the allegations into colorable claims of true intentional torts."  *Keating v. Shell Chem. Co.*, 610 F.2d 328, 332 (5th Cir. 1980).  Tenet has not alleged any outrageous conduct on the part of Chateau and Tenet has not stated that Chateau intended for the plaintiff to be injured.  In fact, the gravamen of the claim seems to be that Chateau did not believe that Plaintiff would be hurt by switching the drugs, but *should* have known, which is a standard for negligent conduct, and not intentional conduct.

**D.  Tenet Is Not a Patient**

Finally, Tenet claims that it does not have a malpractice claim because it is not a patient of Chateau.  Malpractice is defined by the MMA as "an unintentional tort or any breach of

6

contract based on health care or professional services render, or which should have been rendered, by a health care provider, to a <u>patient</u>."   LA. REV. STAT. ANN. § 40:1229.41(a)(8).  Tenet cites *Clark v. Baird,* 714 So. 2d 840, 841 (La. App. 4 Cir. 1998) for the proposition that medical malpractice only applies when a physician - patient relationship exists as the result of an express or implied contract and where the physician breaches either the contract or his professional duty to the patient.

 *Clark* concerned whether a third party who claims that he was injured due to the malpractice of a doctor on his patient was covered by the MMA.  The court concluded that the third party could not be a patient because there was no health care contract between him and the doctor performing the act complained of.

 The Louisiana Supreme Court has recognized that the definition of malpractice in the MMA is ambiguous, and therefore the Court must ascertain the legislature's intent in light of context of definition, text of the Act as whole, purpose of the Act, and laws on same subject matter.  *Hutchison v. Patel*, 637 So. 2d 415, 521 (La. 1994).  The Supreme Court found "apparent in the Act's definition of patient . . . the legislature's recognition of the traditional rule of law allowing recovery for medical malpractice only where a physician-patient relationship exists as the result of an express or implied contract and where

7

the physician breaches either the contract or her professional duty to the patient." *Id.*  In fact, the MMA itself defines patient as "a natural person who receives or should have received health care from a licensed health care provider under a contract, express or implied."  LA. REV. STAT. ANN. § 40:1299.41(A)(3).

There can be no dispute that Tenet is not a natural person. *See* LA. CIV. CODE ANN. art. 24 ("A natural person is a human being.").  In addition, neither Tenet nor Chateau alleges that any contract existed between Tenet and Chateau regarding Chateau providing any health care services to Tenet.  Therefore, to the extent that Tenet's cross claim is for injuries that Tenet suffered, the claims do not fall under the medical malpractice act.

## E.  Tenet's Claim Arises Out of the Harm Inflicted on Chateau's Patient

The *Federal Rules of Civil Procedure* provide that "cross claims may state any claim by one part against a co-party arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein . . . . Such cross-claim may include a claim that the party against whom it is asserted is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant."   FED. R. CIV. P. 13(g).

Thus, it is possible that Chateau's argument is that Tenet's claims against it are the same as those that the plaintiff made against Chateau, and that action is the one that is malpractice, so this action cannot stand either since that one was malpractice.  In other words, if Tenet was simply claiming that Chateau was the only one who is negligent, then Chateau would be correct, that the action is foreclosed by the MMA.  However, if Tenet is making a claim against Chateau because Chateau's actions injured *Tenet*, then that action would not be covered by the MMA for the reasons above.

In *Hutchison*, the Supreme Court held that the MMA applies exclusively to "claims arising from injuries to or death of  a patient where such claims are brought by the patient themselves . . . or other persons with claims arising from injuries to or death of a patient."  *Hutchison*, 637 So. 2d at 428.  The *Hutchison* court concluded that the failure of a psychiatrist to warn the wife of a patient that the patient might harm her, does not fall under the MMA because the alleged tort of the doctor did not arise out of the injury to or death of the patient.

In so holding, the Supreme Court overruled *Thomas v. LeJeune, Inc.*, 501 So. 2d 1075 (La. App. 2 Cir. 1987).  *Thomas* may be the case most on point.  In that case, Mr. Thomas filed suit against LeJeune, Inc. alleging that he fractured his ankle after slipping at a nightclub owned by LeJeune.  LeJeune filed a

third party claim against Dr. Bicknell and the Schumpert Medical
Center seeking indemnification and contribution.  It was argued
that the doctor and hospital negligently treated Mr. Thomas, and
that his injuries were exacerbated by their negligent treatment.
Dr. Bicknell filed an exception of prematurity, stating that such
a claim must go before a medical review board under the MMA.  The
Second Circuit held that "*all* claims against health care
providers for malpractice must first go through the [MMA]
procedure, regardless of whether the claimant is a patient or
non-patient." *Id.* at 1077.  The Second Circuit reasoned that to
do otherwise would place non-patient claimants in medical
malpractice actions in a more favorable position than a patient
claimant.  *Id.* (*citing Gobble v. Baton Rouge Hosp.*, 415 So. 2d
425 (La. App. 1 Cir. 1982).

     The Supreme Court expressly disagreed with this reasoning.
*Hutchison*, 637 So. 2d at 426 ("We disagree with [*Thomas*] insofar
as [it] would suggest it would be "anomalous" or would create an
"unreasonable classification" to limit application of the [MMA]
to claims brought by patients."  Given a chance to revisit the
*Thomas* decision in a later case, the second circuit concluded
that even under the reasoning in *Hutchison*, *Thomas* would be
governed by the MMA.  *Jones v. Scriber*, 716 So. 2d 905, 906 (La.
App. 2 Cir. 1998).  The *Jones* court noted that because the claim
between LeJeune and Dr. Bicknell arose out of harm to Dr.

Bicknell's patient, the act would still govern that case.

In *Jones*, the court considered a suit filed following a car accident.  The plaintiff sued the defendant driver, and the defendant's eye doctor, claiming that the ophthalmologist negligently certified that defendant driver's vision was sufficient for him to safely operate a vehicle.  The Court held that Plaintiff's claim against the doctor is a non-patient claim which does not arise from injuries to the doctor's patient.  The claim arises out of injuries to the plaintiff, who is not a patient.  Therefore the court concluded that the suit was not covered by the MMA. *Id.*

In this case, Tenet's claims against Chateau arise out of the harm that Chateau allegedly caused its patient.  There is no independent injury that Tenet is alleging.  Therefore, Tenet's claim against Chateau must fail for failure to follow the procedures of the MMA.

**CONCLUSION**

For the reasons stated above, Chateau's Motion to Dismiss Tenet's Claim Against It (Rec. Doc. 131) is **GRANTED.**

New Orleans, Louisiana this the 6th day of September, 2007.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE